

1919 Pennsylvania Avenue NW
Suite 800
Washington, DC  20006-3401

**Robert Corn-Revere**
202.973.4225 tel
202.973.4499 fax
bobcornrevere@dwt.com

July 16, 2014

John Ley, Clerk of Court
U.S. Court of Appeals for the Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia  30303

   **Re:** *Thomas Hayden Barnes v. Ronald Zaccari, et al.*,
      **Appeal No. 13-13800-EE (Argued June 13, 2014)**

Dear Mr. Ley:

  Appellant Hayden Barnes, though his counsel, submits this letter pursuant to Fed. R. App. P. 28(j).

  A recent Sixth Circuit decision addresses issues briefed and argued in this case. *See Hescott v. City of Saginaw*, Nos. 13-2103/2153 (6th Cir., July 2, 2014) (attached). Although a decision of the Sixth Circuit is not binding, its analysis of legal questions raised in this case is persuasive authority from which this Court may take guidance.

  The court in *Hescott* made clear that it is an abuse of discretion to improperly apply the law governing attorney's fees to a claim by a prevailing plaintiff under 42 U.S.C. § 1988. *Hescott*, slip op. at 6, 7. This supports Appellant's arguments regarding the standard of review set forth in his merits brief (p. 18).

  In applying the law, *Hescott* explained that a court should not reduce or deny a fee award to a prevailing plaintiff simply because certain of the claims were unsuccessful. Slip op. at 6. It noted that the purpose of Section 1988 is "to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms," *id*. at 8, and that reducing or eliminating fees based on the size of a damages award "would seriously undermine Congress' purpose in enacting § 1988." *Id*. It also found that the plaintiff's failure to win a punitive damage award, and that a simple ratio comparing successful claims against total claims raised, cannot be the basis for denying a fee award. *Id*. at 9-10. These holdings support Appellant's arguments in his merits brief at pp. 51-54 and his reply brief at pp. 26-29.

  Finally, *Hescott* affirmed the denial of reverse fees to defendants (although on other grounds than in this case), but in doing so confirmed that "§ 1988 is not a two-way fee-shifting

Anchorage | New York | Seattle
Bellevue | Portland | Shanghai
Los Angeles | San Francisco | Washington, D.C.

www.dwt.com

John Ley, Clerk of Court
July 16, 2014
Page 2


statute." Slip op. at 12-13.  This supports Appellant's arguments in his merits brief at pp. 36-45 and his reply brief at pp. 15-16.

                        Respectfully submitted,

                        Robert Corn-Revere

Enclosures

cc:      All Counsel of Record

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0138p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

BENJAMIN HESCOTT; JOHN HESCOTT,
      *Plaintiffs-Appellants/Cross-Appellees*,

v.

CITY OF SAGINAW,
      *Defendant-Appellee/Cross-Appellant*.

Nos. 13-2103/2153

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 1:10-cv-13713—Thomas L. Ludington, District Judge.

Decided and Filed:  July 2, 2014

Before:  BOGGS, COLE, and McKEAGUE, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:**  Susan K. Friedlaender, Joseph M. Rogowski, II, FRIEDLAENDER ROGOWSKI, PLC, Farmington Hills, Michigan for Appellants/Cross-Appellees.  Gregory W. Mair, Brett Meyer, O'NEILL, WALLACE & DOYLE, P.C., Saginaw, Michigan, for Appellee/Cross-Appellant.

_____

**OPINION**

_____

      COLE, Circuit Judge.  John and Benjamin Hescott prevailed over the City of Saginaw, Michigan in a Section 1983 action for the unconstitutional seizure and destruction of their personal effects after the City demolished the Hescotts' rental property.  A jury awarded the Hescotts $5,000 in compensatory damages.  In these cross-appeals, we must determine whether the district court erred by denying attorneys' fees to the Hescotts under 42 U.S.C. § 1988 and by denying fees to the City under the cost-shifting regime of Federal Rule of Civil Procedure 68.

Because no special circumstances warranted denial of the Hescotts' attorneys' fees, and because attorneys' fees are not properly awardable to a losing party like the City—even one otherwise entitled to post-settlement-offer costs under Rule 68—we reverse in part and affirm in part the district court's fee determinations.

## I. BACKGROUND

### A. Factual Background

John Hescott is a helicopter pilot in the United States Army. Like so many members of the armed forces, he tried to manage his affairs from afar while routinely deploying to the Middle East during the past decade. One of those affairs became the subject matter of this litigation: a rental property located at 1002 Webber Street, in Saginaw, Michigan.

Hescott and his son, Benjamin, purchased the Webber Street property in 2001 and successfully rented it to tenants from 2001 to 2007. Benjamin tended to the rental property while Hescott was stationed or deployed away from Michigan. Ultimately, Hescott grew tired of managing the property and listed it for sale in March 2008. After receiving no offers, he de-listed the property with the intention of remodeling it for lease or sale. Nevertheless, the property sat vacant and fell into disrepair between the spring of 2008 and summer of 2009.

Following a deployment to Afghanistan and Iraq, Hescott returned to Saginaw in July 2009 to inspect the property. While there, he discovered that the basement wall on the west side of the house had given way. Hescott arranged for a pair of local contractors to repair the foundation and then returned to his post at Fort Rucker, located in Ozark, Alabama. But before the contractors could begin their repair work, a Saginaw police officer noticed children playing in and around the vacant house, so he contacted the City's Dangerous Buildings Inspector. The Inspector, together with the City's Fire Marshal, determined that the house should be demolished immediately due to its dilapidated condition and threat to public safety. The City quickly slated the property for demolition under an emergency provision from its Dangerous Buildings Ordinance.

The City hired an excavation company to demolish the property but did not notify Hescott before or after the demolition. The excavation company demolished the house on

Saturday, July 18, 2009, and returned two days later to remove all fixtures and remaining materials to a landfill. The City did not take an inventory of what was left after the demolition or consider whether any salvageable items remained. Hescott, still unaware of the demolition, returned to the property in August 2009 to assist his contractors with taking measurements and purchasing supplies for the intended repairs. Upon arrival, he realized his house was gone.

**B. Procedural Background**

The Hescotts filed suit under 42 U.S.C. § 1983 against the City and various city officials, alleging seven causes of action. After the district court granted summary judgment to the defendants on five claims, the Hescotts retained a viable claim under the Fourth Amendment for the unlawful seizure of their aluminum siding following demolition of the house and a supplemental state-law claim for the inverse condemnation of their house.

Before trial, the defendants served the Hescotts with an offer of judgment under Federal Rule of Civil Procedure 68 in which they proposed to settle the case for $15,000. The Hescotts rejected the settlement offer and instead proceeded to trial, where they requested an award of $7,000 in actual damages for the loss of aluminum siding; $35,000 in actual damages for the inverse condemnation of their house; and $250,000 in punitive damages against the individual defendants for their callous indifference to the Hescotts' property rights. After a four-day trial, the jury reached a unanimous verdict rejecting the Hescotts' inverse-condemnation and punitive-damages claims, after concluding that exigent circumstances justified the demolition. The jury found in favor of the Hescotts, however, on their Fourth Amendment claim and awarded them $5,000 for the fair market value of the aluminum that was hauled away and discarded.

After the jury announced its verdict, the district court granted judgment as a matter of law to the individual defendants on qualified-immunity grounds. The district court denied judgment as a matter of law to the City, however, thus leaving intact the jury award of $5,000. Several weeks later, both parties moved the court for taxable costs and attorneys' fees.

The district court awarded costs to the Hescotts because they were "prevailing parties" on their Fourth Amendment claim. *Hescott v. City of Saginaw*, No. 10-13713, 2013 WL 2395054, at *3 (E.D. Mich. May 31, 2013). But the court denied the Hescotts' motion for attorneys' fees

under 42 U.S.C. § 1988(b) after concluding that "special circumstances" warranted such a result. *Id.* at *4–5. The court based its fee denial on "the degree of success obtained," which the court labeled as a "modest jury award," and the fact that the constitutional violation "was of little effect." *Id.* The court later affirmed its denial of attorneys' fees in response to the Hescotts' motion for reconsideration. *Hescott v. City of Saginaw*, No. 10-13713, 2013 WL 3817347, at *3 (E.D. Mich. July 23, 2013). There, the court acknowledged that denying fees to a prevailing civil-rights plaintiff is "unusual" but reiterated its view that awarding fees to the Hescotts would be "unjust" under the circumstances. *Id.* The court noted that this suit involved only "the loss of a modest residence" in a neighborhood of "poor condition," and that the Hescotts lost on their primary claim that the demolition was unjustified. *Id.* at *3–4. After considering the results obtained, the legal significance of the issues presented, and the public purpose of the litigants, the court "arrive[d] at the same conclusion" as before and again denied fees to the Hescotts. *Id.* at *4.

On the other side of the ledger, the district court initially awarded the City over $25,000 in costs and attorneys' fees as a sanction under Federal Rule of Civil Procedure 68 because the Hescotts' jury award fell below the defendants' settlement offer. *Hescott*, 2013 WL 2395054, at *7. But the court reversed itself and denied the City its fees following the Hescotts' motion for reconsideration. *Hescott*, 2013 WL 3817347, at *5. The court determined that attorneys' fees were not "properly awardable" to the City because the Hescotts' Fourth Amendment claim was not "wholly frivolous." *Id.*

Both parties timely appealed the court's final attorneys'-fee determinations. The district court had subject-matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction over the parties' cross-appeals under 28 U.S.C. § 1291.

## II.  ANALYSIS

We review a district court's award or denial of attorneys' fees under 42 U.S.C. § 1988 for an abuse of discretion. *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 744 (6th Cir. 2002). We review de novo a district court's legal interpretations of Federal Rule of Civil Procedure 68 and review for clear error the factual findings concerning the circumstances under which Rule 68 offers were made. *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 837 (6th Cir. 2005).

## A. The District Court Improperly Denied the Hescotts' Motion for Attorneys' Fees

The Hescotts argue that the district court abused its discretion by denying their motion for attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. They contend that, as prevailing civil-rights plaintiffs, they were presumptively entitled to attorneys' fees, and that no special circumstances would render such an award unjust. We agree.

Congress enacted 42 U.S.C. § 1988 to encourage the private enforcement of civil rights. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Section 1988 provides that when a party files suit under § 1983, as the Hescotts did here, "the [district] court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Although § 1988 uses permissive language regarding fee awards, "the Supreme Court has read [§ 1988] as mandatory where the plaintiff prevails and special circumstances are absent." *Déjà Vu v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 421 F.3d 417, 420 (6th Cir. 2005) (citing *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989)); *Berger v. City of Mayfield Heights*, 265 F.3d 399, 406–07 (6th Cir. 2001).

The City does not dispute that the Hescotts were "prevailing parties" within the meaning of § 1988. Thus, the only issue on appeal is whether the district court abused its discretion by finding special circumstances that would render a fee award unjust. *See Déjà Vu*, 421 F.3d at 421–22. The Supreme Court has offered "little guidance" as to what constitutes a special circumstance that would defeat a fee award, and our court has eschewed adopting a "predetermined formula" in favor of a "case-by-case approach." *Id*. (internal quotation marks omitted). In this case-by-case inquiry, a non-prevailing defendant bears the burden "to make a strong showing that special circumstances warrant a denial of fees." *Id.* (internal quotation marks omitted). Moreover, "courts have made clear that special circumstances should not be easily found." *Cleveland v. Ibrahim*, 121 F. App'x 88, 90 (6th Cir. 2005) (collecting cases).

At the outset, we note that the City did not argue that special circumstances warranted an outright denial of fees until the district court denied the Hescotts' motion on those grounds *sua sponte*. Rather, the City merely argued that plaintiffs' counsel requested an unreasonable fee in light of the work performed on the Hescotts' Fourth Amendment claim. Only after the court denied the Hescotts' motion for fees altogether did the City jump on the special-circumstances

bandwagon. Assuming, for the sake of argument, that a district court may relieve a defendant of its burden of proving that special circumstances existed, *see Déjà Vu*, 421 F.3d at 422, the court nevertheless abused its discretion by denying a fee award in this case.

*1. The District Court Improperly Applied the Law Governing Attorneys' Fees*

The district court based its finding of special circumstances and related denial of fees on two Supreme Court cases: *Hensley v. Eckerhart*, 461 U.S. 424 (1983), and *Farrar v. Hobby*, 506 U.S. 103 (1992). But the district court seems to have drawn the wrong lesson from both cases and therefore improperly applied the law governing attorneys' fees to the matter at hand.

In *Hensley*, the Supreme Court confronted the question of what constitutes a "reasonable" fee under § 1988. 461 U.S. at 433. There, the Court explained that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* But the Court recognized that other considerations may lead district courts to adjust the fee upward or downward. *Id.* at 434. For example, in cases where plaintiffs succeed on only some of their claims for relief, and particularly where the successful and unsuccessful claims are factually and legally related to one another, a consideration of the "results obtained" may be "particularly crucial." *Id.* Accordingly, the Court provided guidance on how to calculate a reasonable fee where "a plaintiff has achieved only partial or limited success" in a civil-rights suit involving a common core of facts or based on related legal theories. *Id.* at 436.

The *Hensley* Court said *nothing* about denying attorneys' fees altogether where plaintiffs prevail on some claims but lose on others. *Hensley* simply did not involve the presence or absence of special circumstances that might warrant a denial of fees; the Supreme Court addressed only the manner in which district courts should calculate a prevailing party's reasonable fees. Thus, to the extent that the district court relied upon language from *Hensley* for the proposition that "[t]he result is what matters" in finding special circumstances, the court misconstrued the general thrust and holding of the case. *See id.* at 435. Indeed, "[l]itigants in good faith may raise alternate legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for *reducing* a fee," let alone denying a fee award altogether. *See id.* at 435 & n.11 (emphasis added); *accord Déjà Vu*, 421 F.3d at 423.

Similarly, in *Farrar*, the Supreme Court confronted the question whether a civil-rights plaintiff who receives a nominal-damages award is a "prevailing party" eligible to receive attorneys' fees under § 1988. 506 U.S. at 105. There, the Court held that a plaintiff who wins nominal damages *is* a prevailing party under § 1988, but noted that the "technical nature" of a nominal-damages award does "bear on the propriety of fees awarded." *Id.* at 114. Thus, where the plaintiffs' victory is purely technical or *de minimis*, which often is reflected by a nominal-damages award, they sometimes "should receive no attorney's fees at all." *Id.* at 115. The plaintiff in *Farrar* typified this concern: he requested $17 million in compensatory damages and, after ten years of litigation, received just one dollar. *Id.* at 116 (O'Connor, J., concurring). The *Farrar* jury found that only one of the six defendants had deprived the plaintiff of an indeterminate civil right and, even then, that the violation was not the proximate cause of any damages. *Id.* at 106 (majority opinion). Nevertheless, the district court awarded the plaintiff $280,000 in attorneys' fees "without considering the relationship between the extent of the success and the amount of the fee award." *Id.* at 115–16. Accordingly, the Supreme Court affirmed the reversal of the district court's fee award. *Id.* at 116.

Here again, *Farrar* is legally and factually distinguishable from the case at hand, and the district court's reliance on *Farrar* constituted an abuse of discretion. First, *Farrar* dealt with the *reasonableness* of a given fee award, not whether special circumstances warranted its outright denial. *Id.* at 115 ("[T]he only *reasonable fee* [for a pyrrhic victory] is usually no fee at all." (emphasis added)); *id.* at 117 (O'Connor, J., concurring) ("[T]he Court makes clear today that, in fact, [the manner of victory] is part of the determination of what constitutes a reasonable fee."). And more importantly, unlike the plaintiff in *Farrar*, the Hescotts proved an actual, compensable injury. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 556 (6th Cir. 2008) (distinguishing *Farrar* on the ground that, unlike Farrar, Imwalle received "far more than 'nominal' compensatory damages").

To the extent that the district court relied on other aspects of *Farrar* to support its outright denial of fees, it again improperly applied the law to the facts of this case. The district court couched its analysis in terms of a three-factor test Justice O'Connor articulated in her concurring opinion in *Farrar*. That test considers (1) the degree of success obtained; (2) the

significance of the legal issues on which the plaintiff prevailed; and (3) the public purpose served to determine whether to award fees to a plaintiff who fails to prove that the violation caused a compensable injury. *See Farrar*, 506 U.S. at 121–22 (O'Connor, J., concurring). We question whether use of this test was proper given that the controlling opinion of the Supreme Court did not adopt it. Even so, Justice O'Connor's test does not apply here because the Hescotts proved that the City's constitutional violation caused their damages. This simply was not a case where the plaintiffs achieved only a *de minimis* victory, reflected by a nominal damages award.

*2. The District Court Improperly Applied the Law Governing "Special Circumstances"*

The district court's *real* concerns, which the court voiced in its opinion and order denying the Hescotts' motion for reconsideration, seem to be that their claims involved only the loss of a modest residence in a bad neighborhood, that the City acted in good faith in demolishing the house and pursuing its defense throughout this litigation, and that the Hescotts overreached both in the number of claims they pursued and the damages they sought at trial. None of these concerns constitutes special circumstances that would render a fee award unjust. In fact, "we have never (to our knowledge) found a 'special circumstance' justifying the denial of fees." *McQueary v. Conway*, 614 F.3d 591, 604 (6th Cir. 2010). Moreover, "[i]t is 'extremely rare' to deny fees based on special circumstances in other circuits as well." *Id.* (quoting *Saint John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1064 (9th Cir. 2009)).

Begin with the easiest grounds for reversal—that the monetary value of the Hescotts' property or their loss weighed in favor of finding a special circumstance. This reasoning runs directly counter to the purpose of § 1988. *See City of Riverside v. Rivera*, 477 U.S. 561, 574–80 (1986). As the Supreme Court has explained, civil-rights plaintiffs "seek[] to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *Id.* at 574. Therefore, "Congress enacted § 1988 specifically to enable plaintiffs to enforce the civil rights laws even where the amount of damages at stake would not otherwise make it feasible to do so." *Id.* at 577. A rule that eliminates attorneys' fees in civil-rights cases due to the size of the damages awarded "would seriously undermine Congress' purpose in enacting § 1988." *Id.* at 576. We refuse to countenance a decision that does so today. The Hescotts may have owned a "modest residence" in a neighborhood of "poor condition." But their constitutional right to be

secure in that residence, or in what remained of it following an otherwise lawful demolition, remained no less inviolate, and no less worthy of vindication under 42 U.S.C. §§ 1983 and 1988.

Consider next the district court's finding that the City acted in good faith by demolishing the Hescotts' house because it was a dangerous nuisance, by offering to forgo the costs of demolition, and by acknowledging that the Hescotts were entitled to their day in court on the inverse-condemnation theory of recovery. The City may well have acted in good faith, but such a finding does not constitute a special circumstance that warrants the denial of attorneys' fees. We have held time and again that "good faith is not a 'special circumstance' which justifies the denial of attorney's fees under section 1988." *Morscott, Inc. v. City of Cleveland*, 936 F.2d 271, 273 (6th Cir. 1991) (citing *United States v. Slodov*, 675 F.2d 808, 810 (6th Cir. 1982)); *McQueary*, 614 F.3d at 604. Accordingly, the district court abused its discretion by denying attorneys' fees based on the City's conduct before or during this litigation.

Finally, consider the district court's determination that special circumstances existed because the Hescotts prevailed on only one of their claims and, even then, failed to secure a punitive-damages award. This is wrong twice over. As an initial matter, "[a] court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome, even if the plaintiff failed to prevail on every contention." *Fox v. Vice*, 131 S. Ct. 2205, 2214 (2011) (internal quotation marks omitted). District courts may deny fee awards only for work performed on claims "that bore no relation to the grant of relief" or were otherwise "frivolous." *Id.* We have explained the distinction as follows:

> [A] court should not reduce attorney fees based on a simple ratio of successful claims to claims raised. When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced.

*Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1169 (6th Cir. 1996) (citations omitted).

We have not hesitated to reverse a reduction in fees when a district court improperly applied the legal standard for analyzing claims on which a plaintiff had limited success. *See Déjà Vu*, 421 F.3d at 423 ("[W]e have repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed."); *DiLaura v. Twp. of Ann Arbor*,

471 F.3d 666, 672–73 (6th Cir. 2006) (same). We decline to endorse the outright *denial* of attorneys' fees on similar grounds today. As an additional matter, a plaintiff's failure to win punitive damages does not constitute special circumstances warranting the denial of attorneys' fees either. *See Imwalle*, 515 F.3d at 555–56 (affirming district court's refusal to reduce fee award on the grounds of "limited success" where plaintiff won compensatory but not punitive damages). Thus, the Hescotts' failure to secure a punitive-damages award is of no moment to determining whether special circumstances existed that would render a fee award unjust.

For these reasons, the district court abused its discretion by denying the Hescotts' motion for attorneys' fees under the special-circumstances doctrine. We therefore reverse the court's fee award (or lack thereof) and remand the matter so that the court may calculate the Hescotts' reasonable attorneys' fees. We set out the methodology for determining a reasonable fee award in *Wayne v. Village of Sebring*, 36 F.3d 517 (6th Cir. 1994), as follows:

> A starting point is to calculate "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." (This is known as the "lodestar" calculation.) The court should then exclude excessive, redundant, or otherwise unnecessary hours. Next, the resulting sum should be adjusted to reflect the "result obtained." This involves two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"

*Id.* at 531 (citations omitted). Our court adheres to that methodology today. *Jordan v. City of Cleveland*, 464 F.3d 584, 602 (6th Cir. 2006). Because the district court "had a ring-side view of the underlying proceedings," it remains best suited to apply this methodology in calculating the Hescotts' fee award in the first (or rather, second) instance. *See McQueary*, 614 F.3d at 604.

**B. The District Court Properly Denied the City's Motion for Attorneys' Fees**

In its cross-appeal, the City argues that the district court erred by denying the City's motion for attorneys' fees under Federal Rule of Civil Procedure 68. The City contends that defendants are entitled to their post-settlement-offer costs under Rule 68 and that the term "costs" contemplates and includes an award of attorneys' fees. We agree with half of the City's argument. Defendants most certainly are entitled to their post-offer *costs* when Rule 68 applies. But, because attorneys' fees are not "properly awardable" under § 1988 to a losing party like the

City, the term "costs" excludes an award of attorneys' fees in this case. We join the First, Third, Fifth, Seventh, Eighth, and Ninth Circuits in so holding.

### 1. Post-Offer Costs

The City first argues that defendants are entitled to their post-offer costs, enumerated in 28 U.S.C. § 1920, after a spurned settlement offer under Federal Rule of Civil Procedure 68. No quarrel there. Rule 68 permits a party defending against a claim to make a pretrial settlement offer, and if the claimant rejects the offer but then obtains a judgment that is less favorable, the claimant "must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68. As we have explained, this rule "encourages early settlements by increasing the risks to claimants of continuing to litigate once the defending party has made a settlement offer." *Pouillon v. Little*, 326 F.3d 713, 718 (6th Cir. 2003). Thus, claimants who refuse a settlement offer and later fail to receive a more favorable judgment must not only pay their own post-offer costs, but also the defending party's post-offer costs. *Id.* This rule, when applicable, "is mandatory and leaves a district court without any discretion" to deny costs. *Id.*

Here, the district court complied with Rule 68's requirements by awarding the City $751.96 in costs that it accrued after making the settlement offer. Ordinarily, that would end the matter. However, our reversal and remand to calculate the Hescotts' attorneys'-fee award complicates things. This is so because Rule 68 requires the court to compare a settlement offer that includes "costs then accrued" with the "judgment that the [claimant] finally obtains." Fed. R. Civ. P. 68. As the City acknowledges in its briefing, the "judgment" used to make this apples-to-apples comparison includes not just the damages award, but also the claimant's pre-offer costs and fees actually awarded. *See Marek v. Chesny*, 473 U.S. 1, 7 (1985); *see also, e.g.*, *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 449–50 (6th Cir. 2009); *Bogan v. City of Boston*, 489 F.3d 417, 431 (1st Cir. 2007); *Marryshow v. Flynn*, 986 F.2d 689, 692 (4th Cir. 1993); *Grosvenor v. Brienen*, 801 F.2d 944, 948 (7th Cir. 1986).

Consequently, if the district court determines on remand that the Hescotts' pre-offer costs and fees exceeded $10,000—then the Hescotts will have obtained a "judgment" (including their $5,000 jury verdict) more favorable than the City's settlement offer of $15,000. Under those circumstances, the City would not be entitled to *any* post-offer costs under Rule 68, and the

district court must reverse its initial cost award. If, on the other hand, the Hescotts' judgment, including pre-offer costs and fees, is less than $15,000—then the City remains entitled to its post-offer costs of $751.96. We simply cannot settle the matter today by predicting the amount and temporal allocation of the district court's fee award on remand.

   *2. Post-Offer Attorneys' Fees*

The City next argues that the term "costs" in Rule 68 contemplates and includes an award of attorneys' fees such that the rule, as interpreted in *Marek v. Chesny*, not only prohibits the Hescotts from recovering their own post-offer attorneys' fees, but also requires that the Hescotts pay the City's post-offer attorneys' fees. Though this appears to be an issue of first impression in our court, all but one of our sister circuits to consider the matter has roundly rejected the City's argument. We join those circuits in holding that because § 1988 is not a "two-way fee-shifting statute," Rule 68 cannot force a prevailing civil-rights plaintiff to pay a defendant's post-offer attorneys' fees. *See, e.g.*, *Payne v. Milwaukee Cnty.*, 288 F.3d 1021, 1026 (7th Cir. 2002).

In *Marek*, the Supreme Court held that attorneys' fees are included within the definition of "costs" under Rule 68 so long as fees are "properly awardable [as costs] under the relevant substantive statute." 473 U.S. at 9. The Court reasoned that because a prevailing party in a civil-rights suit may recover attorneys' fees "as part of the costs" under § 1988, a plaintiff who receives a judgment less than the defendant's Rule 68 settlement offer cannot recover his or her own post-offer attorneys' fees. *Id.* The Court did not, however, determine whether Rule 68 also imposes the *losing party's* post-offer fees upon a prevailing civil-rights plaintiff. *Id.* at 4 n.1.

Over the years, one appellate court after another has answered that question in the negative. *See Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1030–31 (9th Cir. 2003); *Le v. Univ. of Pa.*, 321 F.3d 403, 411 (3d Cir. 2003); *Payne v. Milwaukee Cnty.*, 288 F.3d 1021, 1027 (7th Cir. 2002); *EEOC v. Bailey Ford, Inc.*, 26 F.3d 570, 571 (5th Cir. 1994) (per curiam); *O'Brien v. City of Greers Ferry*, 873 F.2d 1115, 1120 (8th Cir. 1989); *Crossman v. Marcoccio*, 806 F.2d 329, 334 (1st Cir. 1986); *see also* 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3006.2 (2d ed. 1997) ("[T]he Supreme Court was careful to specify in *Marek* that only 'properly awardable' costs were to be awarded to defendants, and the lower courts have properly held that this means that civil-rights defendants

can recover their fees as a part of costs under Rule 68 only if they can satisfy the otherwise-applicable standard for recovery by defendants.").

Today, we join those circuits in concluding that a losing civil-rights defendant cannot recover its post-offer attorneys' fees under Rule 68 because such a party does not satisfy the requirements for a fee award under § 1988. In determining that Rule 68 "costs" can sometimes include attorneys' fees, the *Marek* Court drew a "strict link" between the rule and the underlying statute that authorizes a fee award. *Payne*, 288 F.3d at 1026. The *Marek* Court stated twice that the term "costs" in Rule 68 refers to "all costs *properly awardable*" under the relevant statute. 473 U.S. at 9 (emphasis added). Thus, the appropriate inquiry is whether attorneys' fees are "properly awardable" to the City under § 1988. *Crossman*, 806 F.2d at 333.

Under § 1988, a civil-rights defendant may recover attorneys' fees only if the defendant is a "prevailing party" *and* proves that the plaintiff's action was "frivolous, unreasonable, or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)); *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 437 (6th Cir. 2009). Here, the City falls short under this test; the City did not prevail on the Hescotts' Fourth Amendment claim and, therefore, could not possibly prove that the action was frivolous, unreasonable, or without foundation. Accordingly, attorneys' fees were not "properly awardable" to the City under § 1988, and the district court correctly denied them.

The City relies largely on dicta from *Marek* for the proposition that that the term "costs" in Rule 68 includes an award of attorneys' fees under § 1988, even for losing civil-rights defendants. We are not persuaded. Every quotation that the City highlights from *Marek* applies with equal force and validity to the limited holding in that case—namely, that prevailing civil-rights plaintiffs may be forced to bear their *own* post-offer attorneys' fees as part of the cost-shifting provisions from Rule 68. We agree that "[t]he Rule prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits," and that "application of Rule 68 will require plaintiffs to think very hard about whether continued litigation is worthwhile." *Marek*, 473 U.S. at 5, 11 (internal quotation marks omitted). Paying a portion of one's own attorneys' fees that would otherwise be

recoverable from the defendant certainly will give civil-rights plaintiffs pause before rejecting a settlement offer.

But the statements the City clings to do not compel an answer to the question *Marek* carefully avoided: whether prevailing civil-rights plaintiffs must also pay their *adversaries'* post-offer attorneys' fees under Rule 68. Congress answered that question with an emphatic "no" when it limited attorneys' fees to *prevailing parties* under § 1988, and the Supreme Court further narrowed the statute's benefit to defendants in *Hughes* and *Christiansburg Garment*. We cannot force through the back-door of a court rule what Congress and the Supreme Court expressly barred at the front gates. *See Grosvenor*, 801 F.2d at 947 n.7 ("Any interpretation of Rule 68 that significantly undercuts the substantive policies underlying § 1988 conflicts with [the Rules Enabling Act]."); *Crossman*, 806 F.2d at 333 ("These two words—'properly awardable'—are so essential to the holding of *Marek* that, even if the Supreme Court had not expressly included them, we would have implied their existence to prevent *Marek*'s chilling effect on the initiation of civil rights actions from attaining glacial magnitude.").

Nor are we persuaded by the City's reliance on a two-sentence analysis from the Eleventh Circuit pertaining to fee awards under the Copyright Act, 17 U.S.C. § 101 *et seq. See Jordan v. Time, Inc.*, 111 F.3d 102, 105 (11th Cir. 1997) (per curiam). There, the court determined that the plaintiff was required to pay the defendant's post-offer costs, including attorneys' fees, simply by stating that "Rule 68 'costs' include attorneys' fees when the underlying statute so prescribes. The Copyright Act so specifies." *Id.* The court in *Jordan* made no mention of *Marek*'s limiting language that Rule 68 "costs" include attorneys' fees only when fees are properly awardable under the relevant statute. *Id.* Nor did the court examine the Copyright Act's restriction that attorneys' fees may be awarded only to a prevailing party. *Id.*; *see* 17 U.S.C. § 505. We are not the first court to point out these shortcomings, nor the first to avoid relying on *Jordan* as a result. Indeed, the Eleventh Circuit appears to acknowledge these critiques itself. *See Util. Automation 2000, Inc. v. Choctawhatchee Elec. Coop., Inc.*, 298 F.3d 1238, 1246 n.6 (11th Cir. 2002) (collecting cases).

## III.  CONCLUSION

For these reasons, we reverse in part and affirm in part the district court's final cost and fee determinations set forth in its orders on May 31 and July 23, 2013.  We remand the matter to the district court for further proceedings consistent with this opinion.  On remand, the district court should first calculate the Hescotts' reasonable attorneys' fees.  Then, the court should compare the Hescotts' jury award and pre-offer costs and fees to the City's settlement offer to determine if Rule 68 applies.  If Rule 68 applies, the Hescotts must bear their own post-offer costs and fees, as well as the City's post-offer costs.  If Rule 68 does not apply, then the Hescotts are entitled to the full measure of their pre- and post-offer costs and attorneys' fees.  Under no circumstances are the Hescotts liable to the City for its attorneys' fees.